CHERRYL WORLEY,

        Petitioner,

v.

UNITED STATES OF AMERICA,

        Respondent.

CR-10-524-DLJ

No. C-013-3951-DLJ

**ORDER**

FILED
JUL 11 2014
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

      On August 23, 2012, Petitioner Cherryl Worley (Worley) was sentenced to 84 months in prison for one count of violation of 18 U.S.C. § 1344, Bank Fraud; and five counts of violation of 18 U.S.C. § 1029(a)(2) Fraud and Related Activity in Connection with Access Devices. Final Judgement was entered by the Court on August 30, 2012. On August 29, 2013, Worley filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct her Sentence.

      The Motion claims ineffective assistance of counsel alleging four separate errors at the sentencing. Petitioner alleges that her counsel was ineffective at sentencing in that: (1) he failed to challenge the definition of "victims" under the Guideline leading to an improper enhancement under Sentencing Guideline §2B1.1(b)(2)(B); (2) he failed to challenge the computation of her criminal history; (3) he failed to seek a downward departure or variance pursuant to Sentencing Guideline §5H1.6; and (4) her counsel failed to object to what she alleges was an improper delegation by the Court to the Probation Department of the terms for her payment of restitution.

## I. Background

Petitioner was named in a 114 count indictment with violations of 18 U.S.C. §§ 1344(1) and (2); 18 U.S.C. § 1029(a)(2); and 18 U.S.C. § 1028A(a)(1). She ultimately entered into a plea agreement with the government under the terms of which she pled to one count of violation of 18 U.S.C. § 1344, Bank Fraud; and five counts of violation of 18 U.S.C. § 1029(a)(2) Fraud and Related Activity in Connection with Access Devices.

In the plea agreement petitioner admitted that she had stolen the identifying information from numerous individual victims for the purpose of defrauding financial institutions as well as the individual victims and merchants. Plea Agreement, ¶ 2. Moreover, the plea agreement set out a calculation of the applicable guidelines, which included both a twelve level enhancement for a loss of greater than $200,000 under U.S.S.G. § 2B1.1(b)(1)(G) and a four-level enhancement under U.S.S.G § 2B1.1.(b)(2)(B) to account for the fact that there were 50 or more victims. Petitioner specifically agreed in paragraph 9 of the plea agreement that this enhancement was appropriate and that "all of the losses . . . and the amount of the loss (and the number of victims associated with that loss)" were attributable to her and that the loss calculation could include losses from more than just the counts to which she was pleading guilty. See Plea Agreement at ¶ 9.

The parties did not reach any agreement as to petitioner's

criminal history category as part of the plea agreement[1]. Plea Agreement 6:1-4.

In the plea agreement, Petitioner also agreed to an amount of restitution. Finally, petitioner agreed by way of the plea agreement that she would not ask for a variance or downward departure below 70 months, and that she understood that the government would argue for a prison term of 84 months (as discussed below, the low end of the relevant sentencing guidelines).

As is standard, prior to sentencing, the U.S. Probation Department prepared a Presentence Report (PSR). The Probation Department shared the PSR with the petitioner and with the government prior to sending a copy to the Court. The PSR stated that there were 4 corporate victims and 57 individual victims of petitioner's conduct. The PSR goes on to note that: "[a]ccording to the case agent the individual victims were made whole by the corporate victims. As such, the only losses claimed by the individual victims are those in conjunction with restoring their credit and ensuring that their identity is not continuing to be utilized.[2]" PSR at ¶ 22.

---

[1] This case constituted petitioner's fourth federal prosecution. Moreover, petitioner committed the instant offenses while serving out the remainder of a prior federal sentence in a half-way house.

[2] Prior to sentencing, twelve individual victims submitted written victim impact statements to the Court discussing the impact on their lives of having had petitioner steal their identities.

3

Petitioner was represented by counsel at the sentencing. The Court opened the sentencing proceeding by first inquiring as to whether both counsel for petitioner and petitioner herself had read the PSR and whether they had discussed its contents. Petitioner indicated that she had read the report and had talked it over with her counsel. TR at 2:14-24 (The Court told petitioner: "We will go through the whole thing. If there's any issues about it, we will deal with those, but I want to make sure you're aware what the report is." Id. at 2:22-24).

The Court then went on to calculate petitioner's Base Offense Level ("BOL") for guidelines purposes. As part of the calculation, the Court increased the BOL by twelve levels because of the amount of loss, an amount which, as noted above was between $200,000-$400,000, which amount had been agreed upon by the parties, and which amount was also reflected in the PSR. The Court also increased the Base Offense Level by an additional four levels because there were more than 50 victims. Finally, the Court added an additional two levels because the petitioner was trafficking in the use of an unauthorized access device. After reducing the Base Offense Level because of petitioner's acceptance of responsibility, the final Base Offense Level calculation was base offense level 22.

The Court found that petitioner was in the highest criminal history category, category VI. Her sentencing range under the Guidelines therefore was a range of 84 to 105 months.

4

The Court then opened up the proceeding for counsel to make any statements they wished about the sentence calculation or the ultimate sentence to be imposed. Consistent with the parameters set out on the plea agreement, defense counsel argued for the lowest permissible sentence --70 months. Defense counsel acknowledged petitioner's lengthy criminal history and recidivism, but pointed out to the Court that prior to the sentencing, she had gone almost three years without incident, which for petitioner was unusual. Defense counsel also asked the Court for compassion based on the serious medical condition of petitioner's daughter.

Again, consistent with the plea agreement, the government sought a prison term of 84 months. The Court sentenced petitioner to a term of 84 months, with five years of supervised release to follow. The Court also entered an order of restitution in the amount of $141,970.33 and ordered petitioner to make restitution payments. The Court additionally ordered that it was a condition of her supervised release that she was to "accept and follow the orders of the Court as to restitution and to follow the orders of the Probation Department with reference to amounts [of] payments and the timing of payments." Transcript of August 23, 2012 Sentencing at 13:21-14:2.

II. <u>Legal Standard</u>

In the plea agreement, petitioner waived her rights to any

collateral attack on her convictions including a petition under 28 U.S.C. § 2255. Plea Agreement ¶ 5. As this waiver is clear and unambiguous it applies to all claims, with the sole exception of a claim of ineffective assistance of counsel. See United States v. Abarca, 985 F.2d 1012, 1014 (9th Cir. 1993).

All of Worrley's claims are predicated on the alleged ineffective assistance of her counsel. A claim for ineffective assistance of counsel is subject to the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984). A lawyer's performance is constitutionally deficient only when it "so undermines the proper functioning of the adversarial process that the [proceedings] cannot be relied upon as hav[ing] produced a just result." Id. at 687.

A petitioner claiming ineffective assistance of counsel bears the burden of demonstrating that, under all the circumstances of her case, (1) her counsel's performance was so deficient that it fell below an "objective standard of reasonableness" and (2) her counsel's deficient performance prejudiced her, meaning "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Hensley v. Crist, 67 F.3d 181, 184-85 (9th Cir. 1995). Furthermore, "[r]eview of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation." United States v.

6

Ferreira-Alameda, 815 F.2d 1251, 1253 (9th Cir. 1987).

III. Discussion

Petitioner has raised several alleged errors on the part of her counsel including: (1) his alleged failure at sentencing to challenge the enhancement to her base offense level for over 50 victims; (2) his alleged failure to challenge the computation of her criminal history; (3) his alleged failure to seek a downward departure or variance pursuant to Sentencing Guideline §5H1.6; and (4) that her counsel did not interpose an objection to what petitioner asserts was an improper delegation by the Court to the Probation Department of the terms for her payment of restitution.

The Court will address each of these arguments in turn. However, the Court begins this analysis by noting that the sentence received by petitioner was both at the low end of the applicable sentencing guideline range and was consistent with the plea agreement of the parties. The Court was not bound by the recommended sentence, and given the gravity of petitioner's conduct combined with petitioner's long history of flouting the authority of the courts as demonstrated by her criminal history, petitioner should be fully cognizant of the positive effect her counsel had on the analysis by the Court of its sentencing options and its ultimate sentencing determination.

   A.   Did counsel err by not contesting the enhancement to petitioner's base offense level for more than 50 victims, when such enhancement was agreed upon as part of the Plea Agreement?

Petitioner argues that it was error for her counsel to not have contested the enhancement to the guideline calculation for more than 50 victims because, as a matter of law the individual victims could not have formed the basis for a multi-victim enhancement because they were "made whole" by the corporate victims.  As support for this proposition, petitioner cites to the Ninth Circuit case of United States v. Armistead, 552 F.3d 769, 781-83 (9th Circuit 2008), as well as some cases from other Circuits.  See, e.g. United States v. Kennedy, 554 F.3d 415 (3rd Cir. 2009); United States v. Orr, 567 F.3d 610 (10th Cir. 2009); and United States v. Yagar, 404 F.3d 967 (6th Cir. 2005).

The government raises both procedural and substantive objections to petitioner's argument.  The government first argues that petitioner is bound by her stipulation in the plea agreement, waived her right to contest the four-level enhancement by not having objected to it at the time of sentencing, and also that claims of non-constitutional error in the application of the sentencing guidelines may not be brought by way of a § 2255 motion. See United States v. Schlesinger, 49 F.3d 483, 485 (9th Cir. 1994); United States v. Keller, 902 F.2d 1391, 1393-94 (9th Cir, 1990)(failure to object at sentencing to alleged error in PSR constitutes waiver of right to attack the PSR through a § 2255

8

motion).

While the Ninth Circuit in <u>Schlesinger</u>, does hold that "nonconstitutional sentencing errors that have not been raised on direct appeal have been waived and generally may bot be reviewed by way of 28 U.S.C. § 2255," claims of ineffective assistance of counsel, such as petitioner raises here appear to be exempted from the waiver rule. <u>Id</u>. at 485. Similarly, in <u>Keller</u>, the defendant was still able to bring a claim of ineffective assistance of counsel for sentencing issues. <u>Keller</u>, 902 F.2d at 1395.

Turning then to the substance of petitioner's claim, the Court finds that <u>Armistead</u>, relied upon by petitioner, does not in fact support her argument on the facts of this case. The Ninth Circuit in <u>Armistead</u> does not state categorically that those made whole may never be counted as "victims." The Ninth Circuit analyzes the language of the Sentencing Guidelines regarding the definition of a victim as one who has suffered a pecuniary harm. The Court notes that it had "not fully addressed when persons whose losses are so reimbursed may be included in the victim calculation." <u>Armistead</u>, 552 Fed. 3d at 781. The Ninth Circuit ultimately concludes that where individuals had at one point suffered a loss which was later reimbursed, they are still to be included in the victim calculation "[i]f that loss is included in the loss calculation." <u>Id</u>. at 782. "Once a loss amount is included in the loss calculation, then the person associated with that loss

9

should also be included in the victim calculation." Id. at 783.

In petitioner's case, both the plea agreement and the PSR included a loss calculation amount attributable to the all of the 57 individual victims. Therefore, as a matter of law, there was no error for the guideline calculation to have included the enhancement for more than 50 victims, and thus no ineffective assistance of counsel in this regard.

B. Did counsel err by not challenging the computation of Petitioner's criminal history?

As set out in the PSR and as reviewed by the Court at sentencing, Petitioner falls into criminal history category VI. Petitioner did not raise any concerns about this calculation to the Probation Department, nor did she interpose an objection to that calculation at the sentencing. Petitioner now claims, however, that her counsel was ineffective because her criminal history points calculation included two criminal history points for prior felony convictions which she assert were too old to be counted.

Petitioner's prior five felony convictions, and two misdemeanor convictions, resulted in a criminal history score of 16 (PSR ¶ 53). Two additional points are added to that calculation to account for the fact that petitioner committed the instant offense while on supervised release. Petitioner's resulting criminal history point is 18, placing her in Criminal History Category VI (PSR ¶¶ 54 & 55).

Petitioner now argues that it was ineffective assistance of

her counsel not to argue that her two prior felony convictions for Theft by Use of Access Card Data (PSR ¶ 46) and Fraud to Obtain Aid (PSR ¶ 47) are too old to count under U.S.S.G. §4A 1.1 (b) and her criminal history points should have been four points lower (two points less for each of those two convictions). Leaving aside again, the issue of waiver for petitioner's failure to raise these issues at sentencing, petitioner's argument is factually inaccurate.

Under Application Note 2, to U.S.S.G. § 4A1.1(b), "[a] sentence imposed more than ten years prior to the defendant's commencement of the instant offense is not counted." However, Petitioner commenced the instant offenses within ten years of the imposition of her sentences for the two prior crimes. Sentence for petitioner on the charge of Theft by Use of Access Card Data was imposed on September 3, 1997, and sentence on the Fraud to Obtain Aid conviction was imposed on February 3, 1999.

As set forth in the "The Schemes to Defraud" section of the Indictment, petitioner commenced the instant offenses "[b]eginning at a time unknown to the Grand Jury, but no later than in or about August 2007" (Attachment B, ¶ 4). In addition, the charged bank fraud offense occurred "[b]eginning at a time unknown to the Grand Jury, but no later than on or about August 10, 2007" (Attachment B, ¶ 10). The charged aggravated identity theft offense occurred "[o]n or about August 10, 2007" (Attachment B, ¶ 14 ). Moreover, the

11

losses relevant to the instant offenses, commenced from at least March 30, 2007.[3] See Plea Agreement, ¶ 9.

Petitioner next argues that <u>Descamps v. United States</u>, 133 S.Ct. 2276 (2013), requires that the government should be required to provide documentation for each prior conviction of Worley's that was a basis for the calculation of her criminal history and that it was ineffective assistance of counsel to not have required the government to make such a showing. <u>Descamps</u> requires no such showing by the government. In <u>Descamps</u>, the Supreme Court held that a modified categorical approach must be applied to determine whether the defendant's prior burglary conviction based upon a "divisible statute" was a violent felony within the meaning of the Armed Career Criminal Act. The Court concurs with the government that the <u>Descamps</u> holding has no relevance to the assignment of criminal history points based upon petitioner's prior convictions.

C.  Did counsel err by not seeking a downward departure or variance pursuant to Sentencing Guideline §5H1.6?

Petitioner next argues that her counsel should have presented case law to the Court in support of a downward variance for her under § 5H1.6 of the Guidelines, exhorting the Court to take into consideration her family ties and responsibilities.

---

[3] The government provided both Petitioner and the Probation Department with a detailed financial chart of losses caused by Petitioner, which included among the total loss calculation of $294,842.65, a loss to an individual account holder dated March 30, 2007 in the amount of $220.58.

Under the terms of the plea agreement, counsel for petitioner was permitted only to argue for a low-end sentence of 70 months. Counsel did so and in support of that request, counsel specifically called out the serious medical condition of petitioner's daughter and requested the compassion of the Court to include that factor in its sentencing determination given the impact the sentence would have on petitioner's daughter. See Transcript of Sentencing Hearing at 6:1-7.

Petitioner has not shown any deficient performance by her counsel in connection with her sentence. Petitioner was charged with 114 counts of fraud, including 48 counts of aggravated identity theft. Defense counsel successfully convinced the government to enter into a plea agreement in which petitioner was permitted to argue for a sentencing variance to 70 months in prison pursuant to 18 U.S.C. § 3553(a), while the government was limited to arguing for an 84-month prison term. As noted above, at sentencing, defense counsel argued for a sentencing variance to 70 months. While the Court carefully considered counsel's entreaties on petitioner's behalf, it was petitioner's conduct including the nature and seriousness of petitioner's offenses, petitioner's persistent recidivism, and the devastating impact on her victims, as evidenced by their presentations to the Court, that determined the sentence the Court imposed. Thus, the Court finds that defense counsel's strategy, "though unsuccessful, was the result of

reasonable professional judgment." See Strickland, 466 U.S. at 699. Nor was there prejudice to petitioner as the presentence report, as well as defense counsel's arguments at sentencing, provided the Court with sufficient information about petitioner's personal and family history. The Court finds that counsel clearly met his obligations in this regard and that his assistance was not ineffective.

> D. Did counsel err by not interposing an objection to the Court's delegation by the Court to the Probation Department of the terms for her payment of restitution.

Petitioner does not challenge the amount of her restitution, which the Court ordered in the amount of $141,970.33. The Court ordered that petitioner was to repay that amount, and that if there were further restitution payments outstanding at the time of petitioner's release that it would be a condition of petitioner's supervised release that she was to "accept and follow the orders of the Court as to restitution and to follow the orders of the probation department with reference to amounts [of] payments and timing of payments." It is this reference to the probation department setting the times and amounts of payments which petitioner now claims was an improper delegation of authority by the Court and error on the part of her counsel not to have argued that such an order was an improper delegation.

As a factual matter, however, petitioner is incorrect that

the Court delegated the authority to the Probation Department. While at the sentencing hearing the Court did not articulate on the record the exact payment schedule for the ordered restitution, in the Judgment entered by the Court setting petitioner's sentence, filed on August 30, 2012, Paragraph D and Paragraph G set out the specific payment schedule: namely that payment in equal monthly installments of a least $250 is to be made starting 60 days after petitioner's release from custody and over a period of 5 years, and also that while in custody, petitioner is to make payments of not less than $25 per quarter.

As petitioner's argument is without factual support, it cannot be the basis for a claim of ineffective assistance of counsel.

IV. Conclusion

The Court finds that Petitioner has made no showing of ineffective assistance of counsel and for that reason her Motion Under 28 U.S.C. § 2255 is DENIED.

IT IS SO ORDERED

Dated: 7/10/14

D. Lowell Jensen
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

WORLEY,

        Plaintiff,

  v.

USA,

        Defendant.
                              /

Case Number: CV13-03951 DLJ

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on July 11, 2014, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Cherryl Worley 97225-011
FPC Dublin
5675 8th Street, Camp Parks
Dublin, CA 94568

Dated: July 11, 2014

                                        Richard W. Wieking, Clerk
                                        By: Jackie Lynn Garcia, Deputy Clerk